**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No.: 08-60254-CIV  COOKE/BANDSTRA

TROPICAL PARADISE RESORTS, LLC,

     *Plaintiff*,

v.

CLARENDON AMERICA INSURANCE CO.,

     *Defendant.*

                       /

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss [DE 19], filed May 29, 2008.

**I.     BACKGROUND**

This Case stems out of damage caused to Plaintiff's property during Hurricane Wilma. Defendant, Clarendon America Insurance Company ("Clarendon"), insured Plaintiff's property against hurricane and windstorm damage.  Plaintiff, Tropical Paradise Resorts ("Tropical"), alleges that Clarendon has failed to pay damages per the policy agreement.  Specifically, Tropical alleges three separate counts in its Amended Complaint [DE 16]: breach of the insurance policy agreement (Count I); statutory bad faith (Count II); and breach of the implied covenant of good faith and fair dealing (Count III).  In its present Motion, Defendant moves to dismiss each of the three counts pursuant to Rule 12(b)(6).

**II.     RELEVANT STANDARD**

"When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted."  *Holtzman v. B/E Aerospace, Inc.,* 2008 WL 214715, at *1 (S.D. Fla Jan. 24, 2008)

(referring to a Motion to Dismiss filed under Rule 12(b)(6)) (citation omitted). This, however, does not give a plaintiff *carte blanche* to merely aver a formulaic recitation of the elements of a claim supported by conclusory labels. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted)). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts . . . ." standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Finally, at the motion to dismiss stage, under Fed. R. Civ. P. 12(b)(6), a court can only examine the four corners of a complaint. *Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F. Supp.2d 1287 (S.D. Fla. 2000).

## III.   DISCUSSION

### A.   Breach of Insurance Policy Agreement (Count I)

In support of its attack on Count I, Clarendon argues that there is no claim arising out of an alleged breach of the Adjuster's Code of Ethics, Fla. Admin. Code § 4-220.201, and that, because Tropical has included such an allegation, its entire claim for breach should be dismissed. Clarendon bases its argument on *Kuhlman v. Crawford & Co.*, No. 01-6036-CIV, 2002 WL 34368089 (S.D. Fla. Jan. 23, 2002). However, *Kuhlman* does not stand for the proposition that a claim must be dismissed if it happens to include an allegation of breach of the Adjuster's Code of Ethics. In contrast with Tropical's first Count, the plaintiff in *Kuhlman* brought a count based

*exclusively* on breach of the Code of Ethics. *Id.* at *4. Because it concluded that Florida law does not recognize a cause of action arising exclusively out of violation of the Code of Ethics, the court in *Kuhlman* dismissed that count for failure to state a claim. *Id*. Here, Tropical has merely included an allegation of breach of the Code of Ethics in its broader claim for breach. Moreover, in Clarendon's Reply, it admits that Tropical has stated a valid claim for breach of the policy agreement but for the inclusion of the single paragraph alleging breach of the Code of Ethics. Although the Court recognizes that there is no cause of action arising solely out of a breach of the Adjuster's Code of Ethics, it would be improper to dismiss Plaintiff's entire first count because of one superfluous paragraph.

### B.      Statutory Bad Faith (Count II)

Clarendon attacks Count II, arguing both that Tropical's claim for statutory bad faith is premature, as there has been no determination of Clarendon's liability, and that, even if the claim were not premature, Tropical has failed to establish that Clarendon was given the required notice of its violation. In its Response, Tropical contends that all conditions precedent have been met and that there has been a determination of Clarendon's liability.

### 1.      The Statutory Bad Faith Claim is Not Premature

In order for a claim for bad faith under Fla. Stat. § 624.155 to accrue, a plaintiff must allege that a determination of the defendant's liability has been made. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). Florida courts have recognized multiple methods for determining insurer liability, including litigation, arbitration, and payment by an insurer of the full policy limit. *See Blanchard*, 575 So. 2d at 1291 (stating that a bad faith cause of action "does not accrue before the conclusion of the underlying litigation" of the breach of contract claim); *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1234 (Fla. 2006) (recognizing that an arbitration award suffices as a determination of an insurer's

liability); *Brookins v. Goodson*, 640 So. 2d 110, 112-13 (Fla. 4th DCA 1994) (holding that payment of the policy limits by the insurer was a sufficient determination of liability for the bad faith claim to accrue), *overruled on other grounds by State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995).  In addition to alleging a determination of liability, a plaintiff must also allege that a determination of the extent of its damages has been made in order for a statutory bad faith claim to proceed.  *See Blanchard*, 575 So. 2d at 1291.  The Eleventh Circuit effectively recognized yet another means of determining liability and damages when it held that "once an [appraisal] award has been made, the only defenses that remain for the insurer to assert are lack of coverage for the entire claim, or violation of one of the standard policy conditions," *e.g.*, "fraud, lack of notice, failure to cooperate, etc."  *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F. 3d 1317, 1319 (11th Cir. 2004); *see also Muckenfuss v. Hanover Ins. Co.*, No. 5:05-cv-261-Oc-10GRJ, 2007 WL 1174098 (M.D. Fla. April 18, 2007).  Thus, if a plaintiff establishes that the extent of its damages has been determined by an appropriate appraisal process, and the defendant neither contests liability as a whole, nor alleges that plaintiff violated any standard policy condition, an appraisal award may be a sufficient determination of liability and damages for its bad faith claim to proceed.

In Plaintiff's original Complaint, it alleged that appraisal was sought pursuant to the terms of the policy agreement because the extent of damages was in dispute between the parties. *See* DE 1.  Tropical further alleged that "Final Appraisal Award[s]" were entered for $3,895,771 in property damages and $1,946,635.80 for business interruption damages.  *Id*.  In its Answer, Clarendon admitted that "appraisal was sought pursuant to the terms of the policy of insurance" and that "appraisal Awards were entered in the amounts denominated" by the Final Appraisal Awards.  DE 3.  Yet, Clarendon continues to dispute that these amounts accurately represent the scope of Tropical's damages.

Clearly, Clarendon does not dispute coverage as a whole.  *See* DE 3.  Nor does it contest that a neutral umpire has determined Tropical's actual loss pursuant to the Appraisal provision of the policy agreement.  *See id*.  Accordingly, Clarendon, in attempting to dismiss the bad faith claim, cannot now dispute the neutral umpire's valuation.  Therefore, the appraisal awards are sufficient determinations of Clarendon's liability and damages for Tropical's statutory bad faith claim to accrue.  However, the Court must now determine whether Clarendon was given sufficient notice of its statutory violations.

### 2.    Clarendon Was Given Sufficient Notice of its Violations

In addition to arguing that Count II is premature, Clarendon argues that Tropical's Complaint fails to establish the requisite elements for filing a bad faith claim under Fla. Stat. § 624.155.  Specifically, Clarendon contends that Plaintiff's three civil remedy notices were deficient.  Clarendon contends that Tropical failed to give Clarendon proper notice of its violations, and that, because giving sixty days notice is a condition precedent to bringing a statutory bad faith claim, the bad faith claim must fail.  Clarendon states that, in order to be valid, a notice "must advise the insurer what it did wrong and what it owes."  *See* DE 19.  Although it is clearly the purpose of the notices to alert an insurer of its violations, Florida's statute does not require an insured to indicate the amount owed, *see* Fla. Stat. § 624.155(3)(b), and Clarendon cites no authority to support that assertion.

Florida Statute § 624.155 states in relevant part:

> Any person may bring a civil action against an insurer when such
> person is damaged:
> (a) By a violation of any of the following provisions by the insurer:
>     1. Section 626.9541(1)(i), (o), or (x);
>                 * * * *
> (b) By the commission of any of the following acts by the insurer:
>     1. Not attempting in good faith to settle claims when, under
>     all the circumstances, it could and should have done so, had
>     it acted fairly and honestly toward its insured and with due

regard for her or his interests[.]

In order to bring such a claim,

> the [Department of Financial Services] and the authorized insurer
> must have been given 60 days' written notice of the violation. If the
> department returns a notice for lack of specificity, the 60-day time
> period shall not begin until a proper notice is filed.
>
> (b) The notice shall be on a form provided by the department and
> shall state with specificity the following information, and such
> other information as the department may require:
>
> 1. The statutory provision, including the specific language of the
> statute, which the authorized insurer allegedly violated.
>
> 2. The facts and circumstances giving rise to the violation.
>
> 3. The name of any individual involved in the violation.
>
> 4. Reference to specific policy language that is relevant to the
> violation, if any. If the person bringing the civil action is a third
> party claimant, she or he shall not be required to reference the
> specific policy language if the authorized insurer has not provided
> a copy of the policy to the third party claimant pursuant to written
> request.
>
> 5. A statement that the notice is given in order to perfect the right
> to pursue the civil remedy authorized by this section.

Fla. Stat. § 624.155(3)(a) and (b).

First, I note that Defendant does not dispute that Plaintiff's notices comply with the third

and fifth requirements of § 624.155(3)(b).  From an inspection of the notices, it is readily

apparent that those requirements have been met, so I will not address them in detail.  Clarendon

argues, however, that Tropical's notices are "entirely 'boilerplate,'" and do not satisfy the first,

second, and fourth requirements of Fla. Stat. § 624.155.  The Court rejects Clarendon's argument

and concludes that the notices are sufficient.

As to the first requirement, Tropical's notices were submitted on the correct form and

clearly stated that Clarendon had violated Fla. Stat. § 624.155(1)(b)(1).  Each notice also stated

the specific language of the statute from that section - "not attempting in good faith to settle

claims when, under all the circumstances, it could and should have done so, had it acted fairly

and honestly toward its insured and with due regard for her or his interests."  *Id*.

       With respect to the second requirement, Clarendon argues that the notices are deficient

because they do not contain all of the allegations under the statutory bad faith count of Tropical's

Complaint.  Considering that the statute requires that "the notice shall be on a form provided by

the department," and because the department's form gives only minimal space for describing "the

facts and circumstances giving rise to the violation," it would be very strange if an insured was

required to incorporate every allegation from its complaint into its notice.  *See* Fla. Stat. §

624.155(3)(b).  Here, in its notices, Tropical states that Clarendon's failure to pay is the event

giving rise to the statutory violation.  *See* DE 16-2.

       With respect to the fourth requirement, Clarendon argues that the notices are deficient

because they fail to reference any specific language from the policy agreement.  However, "an

action for bad faith is extra contractual in nature and relates to the duties of an insurer as defined

by statute, not the express terms of the contract."  *Townhouses of Highland Beach Condo. Ass'n*

*v. Qbe Ins. Corp.*, 504 F. Supp. 2d 1307, 1310 (S.D. Fla. 2007) (citing *Pastor v. Union Central*

*Life Ins. Co.*, 184 F. Supp. 2d 1301, 1306 (S.D. Fla. 2002)).  Thus, it was unnecessary for

Tropical to reference specific policy language.  Moreover, section 624.155(3)(b)(4) only instructs

that notices shall "[refer] to specific policy language that is relevant to the violation, *if any*."  Fla.

Stat. § 624.155(3)(b)(4) (emphasis added).  Therefore, the clear language of the statute attests to

the possibility that it may be impossible to reference any specific, relevant language from the

policy agreement.  As further evidence that Tropical's notices were sufficient, it bears noting that

the notices were accepted by the Department of Financial Services for purposes of starting the

60-day clock.

In an attempt to bolster its argument that the notices were deficient, Clarendon cites *Lane v. Westfield Ins. Co.*, 862 So. 2d 774 (Fla. 5th DCA 2003), and *Longpoint Condo. Ass'n v. Allstate Ins. Co.*, No. 5:05CV45RHWCS, 2005 WL 1315810 (N.D. Fla. June 2, 2005).  The plaintiff in *Lane* sued its insurance carrier for bad faith in settling lightning and windstorm claims.  *See Lane*, 862 So. 2d at 776.  The insurer moved for summary judgment, alleging that notice was insufficient.  *See id*.  The court noted that plaintiff had failed to allege in its notice that the insurer had  wrongfully failed to pay a claim or judgment.  *See id*. at 778.  Accordingly, that court concluded that the insurer had not been given sufficient notice, and that, the conditions precedent to bringing a claim for statutory bad faith *on the basis of failure to pay* were not satisfied.  *See id*.  Furthermore, that court determined that "the allegation that Defendant has 'filed groundless litigation' cannot be fairly construed to also mean that Defendant failed to timely pay a judgment . . ."  *See id.*

By contrast, the primary basis for Tropical's bad faith claim - wrongful failure to pay - *is* clearly stated in Tropical's notices.  *See* DEs 16, 16-2.  Sub-sections H, I, K, L, and M of paragraph 35 of the Amended Complaint are allegations of Clarendon's failure to pay.  *See* DE 16.  Appropriately, Civil Remedy Notices 1 and 2 allege "[f]ailure to pay what [Clarendon] know[s] they owe, as stipulated in their own estimate;" and Notice 3 alleges that "[a]n appraisal award was executed and the insurer is obligated to pay the agreed amount of the award as per policy provisions").  DE 16-2.  Thus, Defendant's reliance on *Lane* fails.

Although *Longpoint* is factually similar to this Case, it is clearly distinguishable in the most crucial aspects.  Just as in this Case, the plaintiff in *Longpoint* was a condominium association, and was suing its insurer for bad faith failure to pay damages resulting from a hurricane.  *See Longpoint*, No. 5:05CV45RHWCS, 2005 WL 1315810, at *1.  However, just as

in *Lane*, the plaintiff in *Longpoint* made no assertion in its notice that the defendant had acted in bad faith by failing to pay the actual loss. *See id*. at *2. For that reason alone, the plaintiff's claim in *Longpoint* for bad faith would have failed. *See id*. However, that plaintiff's claim also failed because, regardless of the value of the actual loss determined through appraisal, the plaintiff in *Longpoint* never gave any indication that it would accept that amount and continued to demand approximately five times the actual loss. *See id*. Most significantly, the insurer in *Longpoint* paid the umpire-determined actual loss before the notice period expired.[1] *See id.* at *1.

Here, it is clear that Tropical is not disputing the appraisers' determination of property damages and business interruption damages. To the contrary, Tropical has continually sought payment of those amounts since the inception of this Case. Both *Lane* and *Longpoint* are distinguishable from this Case, and, contrary to Clarendon's argument, neither case stands for the proposition that all allegations of an insured's claim for statutory bad faith must be incorporated into the notice form. The Court concludes that the notice forms are sufficient. All conditions precedent to Tropical's statutory bad faith claim have been satisfied and that claim is now ripe.

## C.    Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)

Clarendon also moves to dismiss Tropical's third count. Clarendon argues that Florida law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing, and, thus, Count III must be dismissed. In its Response, Tropical argues that "every

---

[1] By contrast, Tropical has alleged that Clarendon refused to pay the undisputed $1.7 million, as determined by Clarendon's own specially chosen construction expert, until after the expiration of the notice period. Additionally, Tropical has alleged that Clarendon has refused, and continues to refuse, to pay the umpire-determined actual loss awards that were determined pursuant to the Appraisal provision of the policy agreement. Because Tropical submitted a Civil Remedy Notice *well over a year ago*, notifying Clarendon of its failure to pay those actual loss amounts, Tropical has successfully alleged Clarendon's failure to pay those amounts within the notice period.

contract contains an implied covenant of good faith and fair dealing," *see* DE 21, and that Florida law does recognize such a claim.  In *Townhouses of Highland Beach*, 504 F. Supp. 2d at 1310, the court explained that a claim for breach of the implied covenant of good faith and fair dealing arises from contractual duties, while an action for statutory bad faith arises out of extra-contractual duties.  Although the parties do not dispute that a plaintiff cannot maintain its claim for breach of the implied covenant of good faith and fair dealing without alleging breach of an express provision of the contract, *Townhouses of Highland Beach* demonstrates that a plaintiff has some leeway in deciding how to organize its complaint.  *See id*. at 1309-10.  In addition to bringing a claim for breach of an express provision, a plaintiff may bring a separate count for breach of contract for breach of the implied covenant of good faith and fair dealing.  *See id*.

Here, Tropical has alleged, within its third count, that Clarendon failed to pay property damages as determined by appraisal and in accordance with the policy agreement.  Moreover, Tropical has also alleged delay by Clarendon in its investigation and adjustment of the claim. The time frame for investigating and adjusting claims is specifically recognized in *Townhouses of Highland Beach* as an implied term that the implied covenant of good faith and fair dealing is intended to enforce.  *See id.* at 1311 (stating that, where the time frame for adjusting, investigating, and paying claims was not expressly stated in the contract, that time frame was to be implied).  Thus, Tropical has alleged breach of both express and implied terms of the insurance policy agreement, and dismissal of Count III is not warranted.

## IV.     CONCLUSION

The Court, having reviewed the motion and having been fully briefed by both parties on the matter and being otherwise advised, hereby, **ORDERS AND ADJUDGES** that Defendant's Motion to Dismiss [DE 19] is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of August 2008.

_Marcia G. Cooke_

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*